SUMRELL & McCOY v. INTERNATIONAL SALT COMPANY ET AL.

(Filed 28 October, 1908.)

1. Contracts, Interpretation of—Sale of Goods Delivered—Pleadings—Allegation and Proof—Evidence.

An accepted offer by letter of vendor for goods to be delivered sometime in October or November, at vendee's option, at a certain price, further stated that a definite time for delivery could not be fixed, owing to the uncertainty of water transportation. In a letter of acceptance the vendee requested that shipment be made between November 1st and 10th. It was agreed that shipment should be made by vessel. Vendee sued for damages arising from delay, alleging delivery was to have been made between November 1st and 10th. The correspondence was in evidence and no amendment of complaint was requested: *Held,* (1) there was a fatal variance between the allegation and proof; (2) there was no definite time fixed in which the goods were contracted to be delivered.

2. Contracts—Sale of Goods Delivered—Indefinite as to Time of Delivery—Pleadings—Allegation and Proof.

When it is stated by vendor, in the course of the correspondence establishing a contract for the sale of goods at a price delivered by vessel, that vessels were scarce, but he would be on the outlook and ship at the earliest possible moment, and nothing appears to indicate that the contract of sale was made upon a different basis, in an action for damages alleged to have accrued on account of delay, it was necessary for vendee to allege and prove, to sustain his action, that the first available vessel was not used by vendor for the shipment.

HOKE, J., dissenting.

ACTION tried before *Biggs, J.,* and a jury, at November Term, 1907, of LENOIR.

The plaintiff sues to recover damages for an alleged breach of contract made by defendant to sell and deliver a cargo of salt. The contract was made by correspondence, all of which is set out in the record. The plaintiffs are copartners, conducting a mercantile business in the town of Kinston. The defendant is a corporation, doing business in the State of New York, engaged in the manufacture and sale of salt, having a branch office in the city of Savannah, Ga. Plaintiffs allege that on 11 June, 1906, the defendant contracted to sell to them 250 tons of salt for the sum of $1,817.80, and to deliver the same "at the city of New Bern, between the first day of October, 1906, and the first day of November, 1906"; that defendant failed to deliver said salt "in accordance with its contract"; that plaintiffs were ready, able and willing to receive and pay for said salt in accordance with the terms of the contract; that by reason of the failure of defendant to deliver the salt plaintiffs sustained $500 damages. Defendant denied that it contracted to sell and deliver to plaintiff at New Bern the salt at the time alleged. It also denied that plaintiff has sustained any damage by reason of its action in the premises. Two issues were submitted to the jury:

1. "Was the contract, as alleged in the complaint, made between the parties; and, if so, was there a wrongful breach of said contract by the defendant?"

2. "What damages have the plaintiffs sustained thereby?"

Upon the conclusion of the evidence his Honor stated that he would instruct the jury to answer the first issue "No" and the second "Nothing." Plaintiffs excepted, submitted to a judgment of nonsuit and appealed.

*Wooten & Clark, E. R. Wooten* and *Shepherd & Shepherd* for plaintiffs.

*Loftin, Varser & Dawson* for defendant.

CONNOR, J. The contract relied upon by plaintiffs is evidenced by the correspondence between the parties, and the

answer to the first issue depends upon the construction of the letters. It appears that defendant's salt works were located at Scranton, from which place the salt was brought through the canal to New York, and shipped from there by schooner to New Bern. There is no suggestion that it was to be shipped by rail. H. H. McKoy, one of the plaintiffs, testifies: "Dealings are in writing, by letter, * * * which was the contract." The first letter introduced from defendant, dated 14 May, 1906, addressed to plaintiffs, acknowledges receipt of a letter asking for quotations, which are enclosed "f. o. b. Schooner New Bern. * * * We could make the delivery of the salt to you sometime in October or November, at your option, though you understand that, by reason of shipment moving by water, an exact date could not be guaranteed on which it would arrive at destination." On 1 June, 1906, plaintiffs wrote defendant: "Referring to your quotations, 14 May, * * * you can enter our order for one cargo, 250 tons, to arrive at New Bern about November 1st to 10th, 1906." June 11, 1906, defendant wrote plaintiffs: "Replying to your favor, 1 June, we have, as requested, entered your order for one canal-boat load of salt, say approximately 240 to 250 net tons." It will be noted that plaintiffs allege that this letter closed the contract. There was a proposition to buy by plaintiffs, and acceptance to sell by defendant. If the case is to turn upon these two letters, plaintiffs have failed to make good their allegation that the contract was to deliver the salt "between the first day of October and the first day of November, 1906." The proposition made by plaintiffs, 1 June, and accepted 11 June, 1906, was that the salt should "arrive at New Bern about November 1st to 10th, 1906." It is clear that this gave to the defendants until the last day named, 10 November, 1906, to deliver the salt.

The breach alleged is that defendant "failed to deliver said salt as it had contracted to do." It is elementary that a plaintiff may not declare upon one contract and, without amend-

ment, recover upon another. If the rules of pleading were otherwise, a defendant would never be able to prepare his defense. If upon the introduction of the letter the plaintiffs had asked permission to amend the complaint to correspond with the terms of the contract, his Honor would, as a matter of course, have allowed them to do so. As said by *Pearson, C. J.*, in *Shelton v. Davis,* 69 N. C., 324, "Under the Code, a plaintiff may sue for a horse and recover a cow; but in order to do this, when the variance appears, the plaintiff must obtain leave to amend by striking out 'horse' and inserting 'cow.'" It is said in *Parsley v. Nicholson,* 65 N. C., 207: "Every material allegation in the complaint which is denied by the answer must be sustained in substance by proofs." This has been uniformly held by all courts in which any degree of certainty in pleading is required. It can hardly be contended that a contract to deliver salt on 1 November, 1906, is shown by proving one to deliver on 10 November, 1906, any more than a cause of action on a note alleged to be payable on 1 November would be sustained by showing a note due 10 November. In either case the variance must be cured by an amendment.

Passing by this view of the case, we do not think that, in the light of all of the correspondence prior and subsequent to 11 June, a contract to deliver, either on 1 November, 10 November or at any other definite time, is shown. The letter of 14 May, 1906, calls attention to the fact that "an exact date could not be guaranteed on which it would arrive at New Bern." On 1 September the plaintiffs write defendant that they wish the order entered "to arrive at New Bern about 15 October." On 3 September defendant replies, from Savannah, Ga., that it had ordered shipment about 15 October, saying: "It may be necessary to ship this a little earlier, on account of conditions of freight on the canal, but the difference in time will not be enough to inconvenience you." On 5 September plaintiffs answer that they want the salt shipped,

instead of 15 October, in time to arrive at New Bern 15 October, or as near that date as possible. On 6 September defendant writes that instructions had been sent to make shipment, "so that, if a vessel for New Bern could be readily obtained, the salt should reach there by about 15 October. You understand that it is not possible to say definitely that a shipment by schooner will· arrive on any particular day, but we will come as near to the date desired by you as we can." On 5 October plaintiffs write to inquire whether the salt had been shipped: "If not shipped, please do. so at once." October 8, defendant answers that the salt has not been shipped, "but we are keeping right after the works, and as soon as a schooner is, secured to go to New Bern your salt will be shipped on her. You understand there are only a limited number of vessels sailing from New York·to New Bern, and it is not always possible to secure one promptly, but our people are on the lookout and will ship your salt at the earliest possible moment." On 16 October plaintiffs write defendant that they hope "you have been able before now to ship our salt, as our trade is already needing and wanting it. Giving you an assortment as early as we did, we did not anticipate but that you would be able to get it to New Bern by 1 November anyway, and we sold accordingly, hoping it would be there by 15 October, which was the time specified. Kindly do the very best for us, as we are needing it." On 30 October plaintiffs again write defendant, saying: "We thought that surely you would get it to New Bern by 15 October and, allowing two weeks for slow time, it would have placed it there 1 November. We sold it to our trade for delivery between 15 October and 1 November, and they are all waiting for same, *yet at this time we have·no guarantee* from you that it will be shipped before Christmas." Defendant wired 7 November to plaintiffs: "Have wired Scranton for definite information regarding your shipment. Will advise promptly as possible." On same day plaintiffs write defendant, complaining of the delay, and

stating that they had sold to customers, etc. On 13 November defendant answers: "Our people have done everything they could to get your salt off, and, as previously advised, the reason for the delay is that they have been unable to get schooner in which to forward salt to New Bern." There was other correspondence of very much the same character, resulting in a cancellation of the order by plaintiffs 4 December, 1906. Treating the contract as closed by the letter of 11 June, 1906, and the other letters as evidence throwing light upon the language used in the letters of 1 June and 11 June, we concur with his Honor that no contract is shown by which any definite day was fixed upon for the arrival of the salt in New Bern. Every letter by both parties recognized the fact that the salt was to be shipped by schooner from New York to New Bern, and that defendant was to ship on the first schooner which could be secured for that purpose. The liability of defendant was to ship by the first available vessel or schooner, and not an unconditional promise to deliver on any definite day. If plaintiffs had alleged and shown that a vessel or schooner did in fact sail, or, by proper diligence on the part of defendant, could have been secured to carry the salt from New York to New Bern, they would have been entitled to recover such damages as they showed they sustained by such failure on the part of defendant. The defendant, in every letter, both prior and subsequent to 11 June, calls attention to the fact that the time of the shipment is dependent upon securing a vessel. On 13 November, referring to the complaint of plaintiffs that the shipment has been delayed, it writes: "It is not within our power to make any definite promise as to the date." Plaintiffs write on the same day: "Since 1 September it seems to us that you could have secured tonnage for New Bern, as it seems you have done for other people." These letters are all introduced by plaintiffs. They clearly establish a contract to ship the salt by the first schooner which could be secured sailing from New

York to New Bern. The plaintiffs prefer to allege and rely upon an unconditional promise "to deliver at New Bern between 1 October and 1 November, 1906," but they fail to show that any such contract was made or that any contract was made binding defendant to deliver at New Bern on any definite day. There is no allegation that a schooner or vessel sailed from New York to New Bern between 1 October and 1 November, or that by reasonable diligence defendants could have secured one. The entire correspondence shows that, while plaintiffs "anticipated" that the salt would arrive, and acted upon such anticipation, they did not claim or suggest that there was an unconditional promise to deliver on any day. They complained of the delay, suggested negligence on the part of defendant in making the shipment, and urged that shipment be made; but defendant, in reply, repeatedly said: "You understand that it is not possible to say definitely that a shipment by schooner will arrive on any particular day," etc. To this plaintiffs made no other reply than to urge shipment. Upon a careful examination of the entire correspondence, we concur with his Honor that no such contract as that alleged in the complaint has been shown. This renders it unnecessary to consider the exception to his Honor's ruling upon the second issue. The judgment must be

Affirmed.

HOKE, J., dissenting: I differ from the Court in the disposition made of this case, and am of opinion that, on a perusal of the entire correspondence and the parol evidence relevant to the inquiry, there has been a breach of contract established on the part of defendant company, and that the order dismissing the action as on judgment of nonsuit is erroneous.

The first letter on part of plaintiffs, of date 1 June, is, in substance, that "You can enter our order for one cargo of 250 tons of salt, to arrive at New Bern about November 1st to 10th, 1906. We, of course, will give you assortment later,

as we wish as long a time as possible to sell our trade and make up quantity of each kind."

On 11 June defendant answers: "Replying to your favor of 1 June, we have, as requested, entered your order for one canal-boat load of salt, say approximately 240. to 250 net tons. You can give us assortment any time up to 1 September, but the earlier you can give it, the better."

On 1 September plaintiffs write to defendant, giving the assortment referred to, to "arrive at New Bern about 15 October; 100 tons table salt, 100 3-pound bags table salt, etc., etc. Please have same shipped care of Atlantic and North Carolina Company."

Defendant, replying to this letter, wrote as follows: "We have your valued favor of the 1st, with assortment for your boat load of salt, which we are to-day forwarding to the works, with instruction to ship about 15 October. It may be necessary to forward this a little earlier, on account of conditions of freight on the canal, but the difference in time will not be enough to inconvenience you," etc.

On 5 September plaintiffs wrote: "We are in receipt of your favor of the 3d, in regard to shipping date of our cargo of salt, and you have it wrong. Instead of shipping 15 October, we want it shipped from salt works in time to arrive at New Bern about 15 October or as near that date as possible."

Defendant replied, on 6 September, as follows: "We have your favor of the 5th, with reference to your order. We sent this in with instructions to make shipment, so that, if a vessel for New Bern could be readily obtained, the salt should reach there by 15 October. You understand that it is not possible to say definitely that a shipment by schooner will arrive on any particular day, but we will come as near to the date desired by you as we can."

There was quite an amount of correspondence after this date, the plaintiffs complaining of a failure on the part of

defendant to deliver the salt as per contract, and stating the disappointment and injury to plaintiffs and their customers incident to such failure, and defendant explaining why this was not done. But the letters set out indicated the contract between the parties, if there was one. The testimony further shows, that defendant, writing at different times in explanation of delay, had failed to deliver to plaintiffs any salt till date, 4 December, when the order was finally canceled. Here was an order for salt for use in the approaching winter season, placed in ample time and accepted for delivery on or about 15 October. If it be granted that some margin was contracted for, owing to the uncertainties attendant upon a shipment by water, the purpose and terms of the contract both gave clear indication that this margin was not to cover a period, at most, greater than two weeks, and that both parties so understood it. And by reason of this margin, too, the contract declared on is not required to be set out with the same exactness of statement as under other and different conditions. The uncertainty was rather in the delay usually incident to water shipment after it had commenced, and there was no indication given that the uncertainty of procuring a vessel for the purpose would in any way affect the time of delivery when the contract was entered into, or until after a delay in breach of such contract agreement had become manifest; and if it were otherwise, the margin allowed, as stated, was evidently not to extend to a period greater than two weeks.

The correspondence between the parties, after it became apparent that a delay would occur, will give some light on the matter, and tends to justify, I think, the position that there had been a wrongful delay on the part of defendant and in breach of its agreement.

On 5 October plaintiffs wrote as follows: "Kindly advise if our cargo of salt has been shipped, and if so, when it is due to arrive. If not shipped, please do so at once. Awaiting your reply," etc.

On 8 October defendant replied: "We have your favor of the 5th inst. Your salt has not yet been shipped, but we are keeping right after the works, and as soon as a schooner is secured to go to New Bern your salt will be shipped on her. You understand there are only a limited number of vessels sailing from New York to New Bern, and it is not always possible to secure one promptly, but our people are on the lookout and will ship your salt at the earliest possible moment."

On 16 October plaintiffs wrote: "We trust you before now, have been able to ship our salt, as our trade is already needing and wanting same. Giving you the assortment as early as we did, we did not anticipate but that you would be able to get it to New Bern by 1 November, anyway, and we sold accordingly, hoping it would be there by 15 October, which was time specified. Kindly do the very best for us, as we are needing it."

On 30 October plaintiffs wrote as follows: "On 1 September, when we gave you assortment for our cargo of salt, we thought that surely you would have ample time to get it to New Bern, N. C., by 15 October, and, allowing two weeks for slow time, it would have placed it there on 1 November. We sold it to our trade for delivery between 15 October and 1 November, and they are all wanting same, yet at this time we have no guarantee from you that it will be shipped before Christmas, which you can readily see is placing us in an embarrassing position to our trade. Some of our competitors take pleasure in telling the trade that we would not be able to deliver the salt, and at the present time this is true, although it is no fault of ours. We will thank you to give us some definite information promptly, in order that we can tell our trade when they may expect the salt. We would also appreciate it if you would advise us if you have already shipped any cargoes to New Bern, because, should our trade supply themselves, we would then have no output for the

148—36

quantity bought from you. As this is very important to us, we trust you will give us full information promptly."

On 7 November defendant wired plaintiffs: "Have wired Scranton for definite information regarding your shipment. Will advise as promptly as possible."

On 7 November plaintiffs wrote defendant as follows: "We wrote you some days ago in regard to our cargo of salt, and as yet have no reply, and we wired you to-day as follows: 'Wire something definitely concerning arrival our cargo salt; important'; which we now confirm and await your prompt reply. We are very much surprised, at this late day, not to have any notice of shipment, for if it now has to be shipped and take several weeks it will arrive too late for our trade, as all are now wanting and needing salt, and you certainly have placed us in an embarrassing position. Other people have had salt to arrive at New Bern, and in fact we were notified to-day from New Bern that ours had arrived, and went around and told our customers it would be here in a few days, and later we were advised that it was for T. W. M. & Co. Certainly, buying at the early date we did, and then giving specifications on 1 September, it is strange that others should receive theirs before we do; and after our trade have bought elsewhere we will then have no use for the salt. It cost us considerable time and money to sell this cargo; and after having done so, it is hard to have to disappoint our trade, besides losing the profit, and we must say that it does not seem to us as if we have been given a square deal. We trust you will favor us with a prompt reply, fully explaining."

As heretofore stated, I am of opinion that this correspondence and the parol testimony relevant to the inquiry clearly show that there was a breach of contract on the part of defendant company, calculated to work the plaintiffs substantial wrong, and that the matter should have been submitted to the jury for decision.